case number 23-35590. Good morning, Your Honors. I'm Jeffrey Baird representing Sarah Rowe. This is a low back pain case. The most important evidence during the period at issue is beginning in January of 2022 where imaging showed a disc herniation at L5-S1 and crowding of the recesses, which is the area around the spinal cord. That's not bone-on-nerve contact, but it is a form of contact. The measurements of the lumbar range of motion on February 1st of that year were severe in every plane. And most importantly, the tug test, which is timed up and go. That's where the patient sits and rises. I don't want to shortchange. I mean, this is all helpful. What I would like to focus on, as I understand it, correct me if I'm wrong, the real issue in this case is we have an expert opinion that came in and the question is whether that expert opinion goes in. Clearly there was some regression at some point. And the question is, did that regression include the time period that was at issue here? Because there wasn't an indication in the expert report. Well there is. He did take a history, so that was going back to the period at issue. But he didn't look at any medical records from before. There was no indication he did. Pardon me? There's no indication he looked at any medical records from earlier. Okay, but he matched them, right? The lumbar range of motion and the... I don't mean he matched them. He made similar findings, which would be even more impressive if he hadn't looked at the other ones. I mean, your argument has to be that he made more specific and more consistent with disability finds because you're relying almost entirely on that and his findings, so it can't be that they're the same. It has to be that they're more helpful to her than the others are. It's more detailed. But the range of motion and the lumbar area were severe in every domain. The ALJ never said that. He said the lumbar range of motion is fine. So she's a lot worse in January 2022. And that's when Dr. Halsor becomes her primary care physician, and Dr. Halsor also signed off on the FCE, the functional capacity evaluation. So are you walking away from the Dr. Miller argument now? No, I'm dealing with the Dr. Miller argument showing Dr. Miller made similar findings to those that were made in January and February of 2022. But Dr. Miller says considerable limitations due to rapid increase in... And he's now after the other reports and after the period. So what do you do with that language about rapid increase? Rapid increase was referring to duration. That is, as she was sitting, it got a lot worse. As she was standing, any static position, it got a lot worse. But his findings aren't dramatically worse. They aren't dramatically worse than Dr. Halsor's of... To be specific, can you prevail without Dr. Miller? I would prevail with the FCE, yes. Or under sentence six, it could be remanded because it has a reasonable possibility, right? What's sentence six? Pardon me? Tell me what sentence six is. This is all very inside-based. Oh, yeah. Well, sentence six of 405G permits this court to remand to the district court to put the fees back under its same number and then send it back to the ALJ, who does additional work, additional development, analyzes the FCE, for example, and then sends it back to the lower court. And the lower court makes a decision. So that's sentence six. I don't get each of these, but my client gets another chance. So we'd asked you to talk and you did some supplemental briefing on the administrative record point. And there does seem to be some confusion on when something's in the administrative record or not. I take it your position is Dr. Miller's report is a part of the administrative record. Right. If you notice to the lower courts, Washington and Oregon do it differently. In Washington, it's treated as sentence four evidence. It's part of the record under review. And that would match the regulations. Remember, Bruce wasn't decided on Judge Posner's policy arguments. It was purely regulatory. And that's true here as well. The regulation has been changed for new evidence, but it includes a good cause requirement. You have to present it to a prior proceeding, which under Bruce includes presenting it to the Appeals Council. That's part of the prior proceeding. There's no question that it was submitted. I think the question is whether it was considered by. And what the Appeals Council here said is, I'm sort of confused because I would think that your argument might be it wasn't part of the administrative record and that's the error because it should have been part of the administrative record because it did encompass the time period. But they didn't consider it because they said it didn't cover the time period. So if they didn't consider it, then how is it part of the administrative record? Well, that was my tricky argument. I showed how administrative regularity follows these cases all from the statute all the way down to the immediate action of the lower court. The Appeals Council had to follow its regulation. And that has been changed. So now the evidence goes in the record, even if it's not exhibited. And the Appeals Council must evaluate and determine if it belongs to be an exhibit. Right. And they did that. No. Well, I think they did that in the sense that they reviewed additional evidence. They admitted three of those exhibits. They did not admit Dr. Miller's report. So I just don't understand why that wouldn't be indication enough that this is not part of the administrative record. Because they had to go through the process articulated in the regulation to evaluate and determine if it belonged in the record. That's precisely what happened in Bruce. But then your point is, under that theory, everything's part of the administrative record as soon as it's submitted. Right. They could send it back. I don't think that's what the case law says. That's certainly not what...  Maybe under the new regulations, they just submit everything to the record. But the final certified record can't contain extraneous documents that the court's not allowed to review. More than that, if, for example, let's say that Dr. Miller's report had said, I've reviewed all of the medical records and I certify that what I'm finding now was also true at that time. I mean, suppose he was specific about it. He did not do that. I'm sorry, what? He did not do that. I know he did not do that. I'm saying suppose he had. Right. And suppose the Appeals Council had said he didn't, it wasn't relevant to the relevant period. Right. Then would we have no authority to say, well, wait a minute, obviously it is. Under Bruce. Once it's in the administrative record. Yeah. Under Bruce, it would be part because... Even if, so there would have to be some way that we could look at the material, which is in physically in the certified administrative record. Yes. And say what the Appeals Council said about it isn't true. Right. We know the Appeals Council had to evaluate and determine if it belonged. That would be the same process as consideration under Bruce. Remember in Bruce, the Appeals Council didn't exhibit it, they rejected it. And Taylor was essentially exactly the case I'm describing. Well, was Taylor brought in under sentence six? I mean, I can't remember. That part I don't know. Yeah. What I do know is that they, the agency had said that it didn't relate to the right period and they said it did. Right. So this would be like Taylor then in that sense. It's like Bruce. It was completed after the period at issue, but has findings relevant to the period at issue because they match the findings in... So ultimately, the real question here is, is Miller's, does Miller's opinion substantively reach that standard or not, i.e., does it relate to or doesn't it relate to? Or was the agency, you know, do we refer to the agency in concluding that it didn't relate to? Well, the findings that he made, for example, on the tug test, which I found useful, that's timed up and go. You start sitting, then you rise, then you walk a few steps, turn, and then go back. In February 1st, 2022, she could not do it. And in Dr. Miller's assessment, she could, but it took her 26.7 seconds, which she said indicated a severe risk of falling and was much slower than normal, which would be under 10 seconds. So she has trouble with static positions and she has trouble changing static positions. That is in both the February 1st findings and in the September 12th findings. And again, Dr. Halsor was the primary treating physician. She knew all these records. She referred all the imaging for the recess, crowding, L5, S1. But also, she certified and said, I cannot say this meets a disability standard. That's not my role. However, I do agree with the functional capacity assessment. And the most important finding was, she can do lifting 10 pounds, a little standing, a little walking, but she can't last eight hours a day. Moreover, the specific findings of the FCE were, she's going to have to do... But in terms of your brief, I don't see anything. It doesn't seem to me that in terms of the arguments you're making, we could reach any conclusion without Dr. Miller. Oh, no. You need Dr. Miller. You do need Dr. Miller. I thought you said... Yeah. Okay. Thank you for clarifying because I thought earlier in response to Judge Berzon's question a few minutes ago, you said you could win without Dr. Miller. No. I could win it under sentence six. Okay. And maybe I should just talk to that for a minute. My opponent didn't respond. Well, actually, why don't we... Yeah. Why don't we give you some time for a while?  I'll take... Can I have two minutes to rebut? One minute? We'll at least give you a minute. We'll probably give you two. Okay. Thank you. All right. Thank you. Good morning, Your Honors. Joseph Leinkammer on behalf of the Commissioner. I want to start, Judge Nelson, with your sort of threshold question about whether or not this opinion is part of the record. My colleague, Mr. Baird, and I agree on that. It is part of the record. And...  And I noticed that. I mean, you didn't make much of a position in the supplemental briefing on this other than just say it. I mean, it's not intuitive to me, though, that it is because I think... And there is confusion on this issue. You would agree with that, right? Yes. That there's confusion on the administrative record point. So, two questions is, I mean, go ahead and explain why you think it is in the administrative record. But also, does it matter? Because at the end of the day, if we thought that they just got it wrong and Miller's report actually did... If we looked at Miller's report, well, if it's not in the administrative record, could we even look at Miller's report? The... No. Well, if it's not in the administrative record, then... Exactly. So, I think if I can sort of explain and then hopefully this will sort of clarify things. When a claimant submits new evidence after an ALJ's decision, they do that basically, you know, when they're submitting a request for review to the Appeals Council. And the Appeals Council typically says something about what this new evidence shows, whether or not it warrants, you know, granting review of the ALJ's decision. And there's a regulation that kind of sets forth, you know, the rules that the Appeals Council follows when in making that determination about whether to grant review. If the Appeals Council grants review based on that new evidence, many times the Appeals Council is looking at the case, is basically reviewing the ALJ's decision and potentially making a new decision. That didn't happen here. What happened here is the Appeals Council received that evidence... Along with other evidence. As well as other evidence. It received the Dr. Miller report as well as other evidence and determined that it didn't warrant granting review. But when it does that, as a matter of agency policy, it still includes that additional evidence in the administrative record. Help me then, because the Appeals Council, there were at least three other pieces of evidence where they said this is part of the record. They did not do that with Dr. Miller. Then there's a, as I understand it, there's, I don't know, is it a clerk or something that basically said it certified Dr. Miller as part of the administrative record. So what does all that mean? I mean, why did they go through and say, hey, these other three pieces are part of the administrative record, but Dr. Miller's not? I think what the, well, what the Appeals Council said about the other, I think that if I'm understanding your question, as I recall, that other evidence may have related to the period. It may have actually been, I think one of the pieces of evidence was like there were some medical records that fell within that timeframe. That's probably right. And I think that's right. And I think maybe where the hang up here is, the Appeals Council can exhibit things or it can just include them in the administrative record. And if you look at the administrative record here, Dr. Miller's report shows up kind of in the earlier part of the record, which means it's not technically an exhibit. But I think all of this, all of this, it's a lot of technicalities and I think it can be confusing, as your Honor points out, but it's still in. About this record. Yeah. You say that they included, as far as I can tell, the medical evidence that was submitted, some of it was rejected as not showing a reasonable probability that it would change the outcome of the decision. We do not exhibit this evidence. And then the Miller evidence doesn't relate to the period issue. And the only thing that they did exhibit was a request for a review of hearing, a request for a review of hearing and a representative brief. Is that right? That's right. So there was no medical evidence that was included. There was no medical evidence that was exhibited. So, for example, had they wanted to, had they wanted to argue about the other medical evidence, then it would have been about whether it showed a reasonable probability that it would change the outcome of the decision. And somehow, if there was a dispute about that, that's still, you're not arguing that we couldn't review that question. I'm, I'm, well. You're saying we could. The Luther, the Luther decision, and I think this also adds a little. Luther, this Court's Ninth, the Ninth Circuit Luther decision, says that we're actually not reviewing the Appeals Council's decision in these cases or the rationale. But if the, but if the Appeals Council had a blatantly wrong characterization of some of this evidence and it's physically in the administrative record, we couldn't say we're going to look at that? You can under Bruce. I think, I think this all goes back to Bruce, which is kind of where I wanted to sort of hear the conversation to. Bruce, Bruce basically says when, and it's sort of a separate inquiry, what does this Court do with that evidence once it's in the record? And that's, that's just what we have here, regardless of what the Appeals Council said it did or did not do with that evidence. Under Bruce, if it's in the record, then this Court can review whether or not the ALJ's decision is supported by substantial evidence notwithstanding that additional evidence. So Judge Berzon, you're, you're, you're absolutely right. You can look at the evidence and I would encourage the Court to look at Dr. Miller's report in this case because it shows that none of it, it doesn't relate, exactly. It's about, you're saying, but if it were not part of the administrative record, could we, wouldn't we then say there was an error in not putting in the administrative record and not considering it? If it was not in the administrative record, I think, I think my colleague is correct that we're talking maybe more about a sentence six issue because what happens in sentence six, that's a sentence six of 42 U.S.C. 405G, talking about court review, and it's a, it's sort of a technical term, but, but what sentence six is referring to is when new evidence is submitted for, say, the, you know, the first, that's not in the record, and often we see it, it's the first time in federal court a claimant comes in, submits new evidence. What this court looks at in a, in that scenario is, was the evidence new, as in, is this, was it in the record or is it new? Is it material? Does it, you know, somehow impact the ALJ's decision and was there good cause? And that's right in the statute. So it's, it's not as if this court can never look at that evidence that's coming in outside of the record. But under the Appeals Council said, as to Dr. Miller, it doesn't meet the materiality requirement, right? Because it doesn't go to the time period. Well, right. Under the regulations, that is, that's also one of the things the Appeals Council looks at as well. But I think, I think to your, your question, it is, this, this report is in this record, so we don't have to reach sentence six. I mean, in our brief, we, is there any difference between submitted and considered by, under Bruce? I don't believe so. I think under Bruce, if the, if the Appeals Council, and I don't, I really just don't think there's much daylight between Bruce and what we, what the, what the Appeals Council did here, which I think my, my colleague is correct, the Appeals Council had to somehow consider this by looking at it and making a determination whether or not it actually related to the issue. There's some language in the regulation about official record, as if that somehow, is that different from the administrative record? I'm not, I'm not aware of that specific language, Your Honor. I'm sure you're right. I, I, I think the certified administrative record, which we cite as the CAR in, in our Social Security cases, is the, is the official record for purposes of judicial review. So if, you know, we've got this, these bulk of records that came in after the ALJ's decision here, which includes Dr. Miller's report, that is part of the certified administrative record because it is technically not an exhibit, because it wasn't in front of the ALJ at the time, and the Appeals Council didn't include it as one of the F exhibits. But in compiling that administrative record, it did become part of the record because it is in there. So again, under Bruce, the inquiry is whether or not the substantial evidence. 404.96B says something about, will only make it part of the official record if it meets the temporal relevance requirement. Okay. So it, it, it seems like the regs maybe think there's a difference between an official record and a, and the administrative record, by, by which has the, by whether it's called exhibited, which is a word I never heard before. Yeah. And, and I, I can understand there's a lot of, I mean, I, I do think there is a, there is a little bit of confusion here, but at the end of the day that the, the Ninth Circuit's Bruce standard. Well, I'm not sure. I mean, look, I, I'm not sure it's fair to say that Bruce solves this problem because even after Bruce, there's still a lot of confusion in the district courts on this issue. And so I, I mean, one question is, should we take this case as an attempt to clarify it? I'm not so sure, given that I'm not sure we would clarify it, and I'm not even sure what clarification would mean here, because at the end of the day, it seems like we could consider this in one way or the other, even if it wasn't part of the administrative record, we'd say, well, that was error because it turns out he actually said it did cover this time period and therefore the appeals council erred by saying that it didn't. I mean, we, we could do that, right? Absolutely. I mean, you're, yes. I mean, you could, you could, you, you could find that, I think what your honor is referring to is if it's not technically part of the record, then I think we are in sentence six territory.  And then we just remand it back. Well, you would if, if you found that it was both material and there was good cause for not submitting it earlier. And here, neither of those requirements are met because- Isn't good cause now part of the administrative standard as well? I believe it is. I don't have the regulation right in front of me, but it's definitely part of the- I think that's where I'm still hung up on this because I think to get into the administrative record, there's a requirement of materiality at a minimum and here there was no materiality. So therefore it isn't part of the administrative record. I mean, it's kind of silly because they could submit a hundred different reports and the appeals council says, look, all of this is great for a new claim, but it has nothing to do with the claim that we're currently reviewing. And then you'd say, well, that's just all part of the administrative record when it really had nothing to do with the decision here. I, I agree. I mean, I, I agree that, that it would not have anything to do with the decision here. I mean, that's, that is exactly what we argued in our brief that Dr. Miller's opinion doesn't have anything to do with the issue here. But I think, and I, I mean, I understand your honor's question. I do think under brews, you know, the, the way that this court has ruled, how it evaluates appeals council evidence, you know, evidence that comes to the appeals council after the LG's decision. I think this court's brews decision does answer this issue. And that is, would be something mighty weird about saying something isn't part of the administrative record, which is physically in the administrative record. And I, and I think that, I mean, that is, that's our position, I think, because it is technically in that certified administrative record. Well, but that also can't be the test because you could have a clerk error or whatever that puts it in. That doesn't make it part of it. I mean, I, and I'm, it, I guess what I'm really trying to struggle with here is there's something different about the social security administrative record. Because in a normal administrative record process, it's only material that goes to the decision of the agency. So you wouldn't have all this extraneous evidence that didn't go to why they made the decision. And here you're sort of suggesting no, as long as it was submitted and they made a crack whether it was relevant or not, that's enough to get in the administrative record. That would not be the case in other agency decisions. And, and your honor, you know, may very well be right on that. I do think if, if we're looking at the exhibits that the ALJ considered, so that's in the medical records are often in the, you know, the F exhibits that, that your honors are probably familiar with. So, so these, these records did not appear there. So the appeals council didn't actually put them into the F exhibits, which were part of the official record in front of the ALJ. That's what the ALJ looked at. If you're looking at what the court record though, what the certified administrative record that was submitted to this court that was compiled, it is part because it's in, if your honors go into the, the electronic certified administrative record, you'll, you'll see these kind of right up front. We know it wasn't an administrative mistake because the regs say they're going to put it in the administrative record. They do. And we know it wasn't a mistake because if you, if you look at what, how the appeals council described the evidence that it was considering, it matches, you, you can match it up. It says, you know, like for example, 33 pages of medical records from this facility. But that's what the current regulation anyway say, and we will put it in the administrative, in the certified administrative record. Even, I believe it does, even if we're not, even if we don't. Right. Even if we don't exhibit it, we will include it. And I think it is, and I do think it is so that one of the reasons perhaps is so that the court can look at it and, you know, because we often do get arguments about, you know, specifically in the ninth circuit, we often get arguments about, well, this new evidence that I submitted to the appeals council undermines the ALJ's decision. The only way the court can evaluate that issue is, is by looking at it. So we, we do that so that the court can look at it. And the same with sentence six, if, if for the very first time, you know, the claimant submits something and attaches it to the federal court brief. Again, this court has to look at those sentence six requirements too. I see I'm over my time. I do just want to make one final point, if it's okay. Again, we, regardless of whether or not you apply brews, which we would submit as the correct position, or if you're applying sentence six for, you know, material that's not technically part of the record, as we set forth in our brief, the, you know, Dr. Miller's report just simply does not meet those standards here. Okay. Thank you. We'll give you two minutes for rebuttal. All right. On page seven of the gray brief, I do a nice summary of some of the critical evidence during the period at issue. And that includes the January and February, 2022 imaging and the flexion, severe extension, severe side glides, severe. Also the tug test, which is the standing and walking test she couldn't do. They said it was too painful for her. Duration can be met if an impairment meets a disability standard during the period at issue, and then is likely to continue for 12 months. So we have evidence from January, 2022 of the L5 S1 crowding the recesses. And we have on February 1st, the severe pain on all lumbar range of motions, the increased peripheralizing even during treatment and the tug test. Interesting point on that. She could do the tug test with Dr. Miller, but she did it so slowly. He regarded it as a great risk of falling. So his findings are a continuity of the findings made in January and February. But to the extent you said earlier that you need Dr. Miller to prevail. I do. And if his to the degree that his findings are only the same as they were earlier. Well, the judge never said about anything. It does because the ALJ never discussed. In fact, misstated flexion, severe extension, severe. The ALJ said that's all normal mistake. And you perhaps could have asked us to reverse based on that. But you didn't. You're telling us that everything turns on Dr. Miller and if everything turns on Dr. Miller, if Dr. Miller is only saying what was already said, then it doesn't advance anything. So it's only to the degree he's saying things that weren't already said that he matters, right? And to the degree he's saying things that weren't already said, how do they relate to the earlier period? The ALJ made an error by not mentioning the February and January evidence. In fact, misstating it. And I did include that in my briefing, certainly in the reply brief. That's evidence the ALJ misstated. Does it standing alone establish disability? Who knows? It doesn't have an opinion associated with it. But it does when Dr. Miller gives his opinion. I think because it's because the earlier ones were the medical evidence, but they didn't have associated. They didn't have an opinion, but Dr. Miller gives the opinion and his findings are similar to claimant's testimony during the hearing that she has to rest when she's doing dishes, that she gets help from her husband. So things appear to be worse at the time of the hearing than they were earlier when she was getting better after her initial surgery in 2019. So I'd say the crucial dates begin in January 2022, the findings on the tug test and so forth in 2022 in February, and then Dr. Miller's own findings. An interesting thing about Dr. Miller also, he said the intensity increases as the static activity continues. When the claimant left, she was more antalgic in her movement than she was when the testing started. And that matches what she claimed, that she can sit, she can stand, but it's hard for her to do it long. She has to adjust her weight. She has to adjust her position and eventually has to change because the pain becomes excruciating. So if she's standing, she's eventually got to sit. If she's sitting, she's going to have to stand. Right. So Dr. Miller supports that. OK, thank you. OK, we've given you a little bit of extra time. Thank you very much. Thank you both for your arguments in this case. The case is now submitted.
judges: FLETCHER, BERZON, NELSON